UNITED STATES v. GREENE et al.

(District Court, S. D. Georgia, E. D. January 26, 1906.)

CONSPIRACY—CRIMINAL PROSECUTION—EVIDENCE.

Letters *held* admissible in evidence on the trial of defendants, charged with conspiracy to defraud the United States in relation to contracts for public work, as tending to show an outside business association and intimacy between defendants and their alleged co-conspirator, who was the government engineer in charge of the public work.

On Objection of Defendants to Admission of Certain Evidence. See 115 Fed. 343.

Marion Erwin, U. S. Atty., Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty., and Alexander Ackerman, Asst. U. S. Atty. Peter W. Meldrim and William W. Osborne, for defendants.

SPEER, District Judge. Orally. The following letters are offered by the government and objected to by the defendants. The first is a letter of January 22, 1891, written from the office of B. D. Greene, consulting engineer:

"New York, Jan. 22d, 1891.

"Dear Carter: Yours at hand. I have seen Mr. Richardson and he will see Mr. Depew soon and find out what he can. He says he knows they are going to build soon. He promises to let me know when the time comes to make a proposal. Would it not be well for Mr. W. to write a line to C. V. and ask him about it saying that he had a group of friends who wished to make a proposal when the time came. This would make it doubly sure. I can't find any book on Bridges that is any good. Saxon don't know of any. Let me know if any thing is done as I suggest above. When Mr. Bolles returns I will find out from him if he knows a good book.

"Yours truly,                                        B. D. Greene."

Then follows the next letter from Carter to E. V. Rossiter:

"Washington, D. C., Mar. 27, 1891.

"Mr. E. V. Rosster, Grand Central Depot, N. Y.—Dear Sir: When I presented your letter to Dr. Webb today he told me that he had already virtually let the contract for the Herkimer-Poland Extension to Mr. Westbrook, a partner of Gen. Husted, that the greater part of it had actually been let; that work had begun on last Monday & that he preferred to let the rest of the contract to the same party to whom he had already let the greater part. I regret exceedingly that I had no opportunity to submit a proposition for that work—either as a whole or in part as I feel confident that it would have inured to the Company's benefit as well as to my own.

"Very sincerely yours, O. M. Carter."

The next letter is from Carter to Dr. W. S. Webb. This is written from the—

"United States Engineer Office, River and Harbor Improvements and Fortifications in Georgia and Northeastern Florida. Subject: Adirondack R. R.
"Capt. O. M. Carter, Corps of Engineers U. S. A., in Charge.

"Savannah, Ga., April 6, 1891.

"Dr. W. S. Webb, Pres. Wagner Palace Car Co., Opposite Grand Central Depot, New York City—Dear Sir: Referring to our Conversation of the 27th ult. I beg to state that if any Extension of your Adirondack R. R. to Tupper Lake or elsewhere is contemplated I should be glad to have an opportunity of submitting a proposition for the construction of the same.

"My associates & myself are in a position to begin work at once; to make a contract of any amount of work & to carry the same forward to your entire satisfaction.

"Very sincerely yours; O. M. Carter."

This additional letter is offered, marked "personal":

"United States Engineer Office. Subject: Buffalo Work.

"Savannah, Ga.

"Mr. Walter Catte, Chief Engineer N. Y. Central & Hudson River R. R., Grand Central Depot, New York—Dear Sir: Referring to our conversation of Thursday the 14th instant concerning the proposed Buffalo work, I shall be much obliged if you will write or wire me at least a fortnight or three weeks before said work comes up. Should the work come up sooner than you anticipate, I can be in New York in thirty-six hours in response to telegram. Thanking you in advance for your courtesy, I am very truly yours,

"O. M. Carter."

These letters are offered in support of the charge made by the government that the engineer officer, Carter, who had exclusive charge at the time of the extensive government works in Georgia and northeastern Florida, had embarked with the accused with whom he is jointly indicted here in various other enterprises. These letters prima facie are clearly admissible for that purpose. The last letter of the series, before the Catte letter was introduced this morning, it will be observed is written by Carter himself. In the series, then, there is a letter from one of the alleged conspirators. This is B. D. Greene. In this letter Greene inquires of Carter, "Would it not be well for Mr. W.," who, the district attorney states, will be shown to be Mr. Westcott, Carter's father-in-law, "to write a letter to C. V.," who, the District Attorney states, he will show to be Cornelius Vanderbilt, and inform the latter gentleman "that he had a group of friends who wished to make a proposal when the time came." These two letters might indicate a close communi-

cation between Greene and Carter. It leaves somewhat indefinite the work which the group of friends, it seems (provided all of this is accepted as genuine), were attempting to secure through the agency of "Mr. W." from "C. V." Carter's letter offered at this particular time would seem to clear up this matter. It is written fom the United States Engineer office, river and harbor improvements and fortifications in Georgia and Northeastern Florida, and the subject is stated to be "Adirondack R. R." and it is written to Dr. W. S. Webb. The district attorney, Mr. Erwin, who like Mrs. Jarley's wax works is the "delight of the nobility and gentry," states that Dr. Webb is related to "C. V." Whether this is true or not, on the face of it Carter's proposition refers to his own associates and seems unequivocal. Who those associates are the jury must infer, if they can, from this and other evidence. He says:

"I beg to state that if any extension of your Adirondack R. R. to Tupper Lake or elsewhere is contemplated I should be glad to have an opportunity of submitting a proposition for the construction of the same. My associates and myself are in a position to begin work at once, to take a contract for any amount of work and to carry the same forward to your entire satisfaction."

These associates the government will insist are Messrs. Greene and Gaynor. An association is thus clearly stated. The jury will look to the proof to ascertain if these accused were the associates. Whether it was competent for Carter, an engineer officer of the United States, educated by the United States, and in charge of government work, to take part in outside work of this sort need not now be discussed; but his statement, showing an association for purposes other than the duties to which he was assigned in his district, are clearly stated in the letter, and his language must be construed as intending exactly what he states, namely, that he was in such association. This is also material for the purpose of showing intimacy between the alleged co-conspirators, as charged in the indictment, often essential to the proof of conspiracy or joint participation in criminal conduct.